**E-FILED**
Friday, 28 July, 2006  01:18:44 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LINETTE METZGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   04-3013 |
| | ) | |
| | ) | |
| ILLINOIS STATE POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendant's motion for summary judgment.

### I. FACTUAL BACKGROUND

#### A. Introduction

Plaintiff Linette Metzger alleges that Defendant Illinois State Police ("ISP" or "the Defendant") retaliated against her in violation of Title VII. The Plaintiff previously brought a federal lawsuit against certain employees

1

of ISP alleging, <u>inter alia</u>, that she had been discriminated against in violation of Title VII.  The Plaintiff states that lawsuit, <u>Metzger v. DaRosa, et al.</u>, Civil Action Number 98-3297, resulted in a jury verdict in her favor that was ultimately taken away.  Judgment was eventually entered against the Plaintiff.

Metzger asserts that she was retaliated against since those previous claims.  She contends that while there have been many instances of retaliation, two significant incidents form the basis of her claims.  The first is that she was denied an upgrade to a Public Service Administrator position ("PSA").  Additionally, the Plaintiff was passed over for a promotion in favor of another employee.  ISP labels Metzger as the very model of "an irritable, chip-on-the-shoulder employee seeking review of actions which she did not like."

<u>B. Kirk Lonbom deposition</u>[1]

Kirk Lonbom has been employed by Defendant ISP for fifteen years.

---

[1]In support of its summary judgment motion, ISP divided its material statement of alleged facts based on the depositions of  Lonbom and Metzger.  The Court will do the same.

In November 1998, Mr. Lonbom was appointed as Bureau Chief for the Firearms Services Bureau ("FSB" or "bureau").  Lonbom served as a sworn officer of the FSB from 1983 to 1990.  ISP alleges that Lonbom changed the structure of the bureau in an attempt to address its needs and to restructure it based upon the functions that were being performed.  Metzger claims that statement is largely conclusory and is difficult to agree with or to dispute.  She notes that while Lonbom made modifications to the bureau, there are questions about whether the actions were for the betterment of it.  Lonbom believed that the responsibility for the programs of the bureau rested with the bureau chief, a fact which Metzger claims is largely irrelevant.

At the end of 1999 or beginning of 2000, Mr. Lonbom altered the structure of FSB to create, inter alia, an enforcement support unit.  The Plaintiff notes that the bureau continued to perform the same job duties.  Metzger was transferred into that unit in approximately February of 2000.

The Defendant alleges that prior to creating the unit, Lonbom formed the opinion that the employee that would head the enforcement unit would be a sworn officer.  ISP asserts that Lonbom believed this for the following

3

reasons: (1) the importance of knowledge of the criminal code; (2) to be better able to handle communications with sworn officers in the field; and (3) to cover the potential need to operate in the field if a force of action might be necessary.  The Plaintiff disputes these allegations.  Metzger alleges that while this might accurately reflect the testimony of Lonbom, the undisputed facts show (1) that the duties of the position were previously performed by a non-sworn employee; and (2) Metzger performed each of the duties that any sworn officer in the position ever performed.

Soon after being transferred into the enforcement unit, the Plaintiff requested that she either be promoted or transferred out of the unit. Metzger was transferred into the enforcement unit in February, the same month she requested to be promoted.  According to Mr. Lonbom, the enforcement unit is comprised of two positions, specifically a sworn officer who is supported by Metzger.  The Plaintiff agrees that there have always been two people since she has been in the enforcement section.  However, she claims (1) that the duties of the position were previously performed by a non-sworn employee; and (2) she has performed each of the duties that

4

any sworn officer in the position ever performed.[2]  ISP alleges that the enforcement support unit has never had any other employees assigned to it other than the sworn officer and its support position filled by Metzger.  The Plaintiff objects to this allegation on the same basis noted above.

Wanda Kaidell was the section chief over the eligibility section and supervised four or five people.  The Plaintiff notes that Ms. Kaidell was a non-sworn employee of ISP.  The Firearms Transfer Inquiry Program ("FTIP") section was supervised by Cheryn Lawson, who oversaw approximately six employees.  Metzger notes that  Lawson was also a non-sworn employee.

The Defendant alleges that when Lonbom supervised the bureau, he believed that Metzger seemed to be more concerned about whether others were doing their jobs instead of how she was doing her job.  The Plaintiff objects to this allegation and says that the conclusory statement is

_____

[2]Metzger would summarize her duties as follows: "Responsible for planning, organizing and evaluating the statewide Firearm Owner's Identification (FOID) Enforcement Program; serving as a statewide FOID officer with authorization to approve, deny, revoke and/or seize FOID cards issued to citizens of IL in compliance with the FOID Act and federal firearms regulations; interprets statutes, regulations and rules which impact FOID Enforcement and FOID eligibility."

supported by absolutely no evidence.  Metzger claims that at all times, she was concerned about the people of Illinois who she was charged with protecting.  She states that she did complain when people did not follow protocol and procedures that resulted in the loss of life.  The ISP next asserts that it was communicated to Lonbom that Metzger believed the job she was doing should be classified at a higher level, specifically a PSA position.  The Plaintiff notes that her supervisor, Rick Kahrliker, agreed with her.  Metzger has submitted information at various points in time for many years that she felt her job should be classified as a PSA.  Mr. Lonbom did not believe her work was at a PSA level.  ISP contends that Lonbom is not the ultimate classifier of jobs; the Illinois Department of Central Management Services ("CMS") is.  Metzger disputes this statement and further states that Kahrliker was told by Lonbom in April of 2002 that Metzger was not classified as a PSA because of budgetary constraints.

The Defendant alleges that Lonbom was "excited" that CMS was involved as this would allow him to say what he believes the job entails; Metzger and her supervisors could say what they believed the job entails;

6

and CMS could decide.   While acknowledging this reflects Lonbom's testimony, Metzger contends it does not reflect what he has said on previous occasions.   On one occasion, he advised Kahrliker that Metzger could not be promoted because of financial considerations.   ISP claims that Mr. Lonbom did not have the authority to make the Plaintiff's position into a PSA level position.   This would have required permission and agreement from CMS.   The Plaintiff disputes these allegations by making the same objections noted above.

The Defendant next alleges that Candice Burns was transferred into the bureau as a PSA; she was not promoted.   ISP further alleges that Mr. Lonbom's only role in the job audit was preparing a memo describing from his perspective what Metzger's job entailed.   The Plaintiff objects to this assertion on the basis noted above about what Lonbom previously said about the job.   Lonbom supported the CMS evaluation.   The ISP contends that Lonbom knew Metzger had a lawsuit, but he had no knowledge about the lawsuit's allegations or any of its details.   The Plaintiff disputes this allegation and claims that circumstantial evidence suggests otherwise, as is

outlined in her brief.

C. Plaintiff Linette Metzger's deposition

The Plaintiff is employed by ISP as an Administrative Assistant II. ISP alleges Metzger believes that the department has been retaliating against her because she reported wrongdoing.  In response, Metzger claims that the retaliation has occurred because she has pointed out unlawful conduct on the part of ISP employees.

ISP alleges that the data entry section was supervised by an Office Administrator III or IV; the eligibility unit was also supervised by an Office Administrator III or IV.  An Office Administrator IV title is approximately three levels below the Administrative Assistant I title.  Mr. Lonbom left the bureau in October of 2002.

The Defendant further claims the enforcement unit was staffed with just two people, Ms. Metzger and the head of enforcement.  When Metzger was first placed in the enforcement unit in February of 2000, she had nothing to do.  The Plaintiff did not know what the functions or duties of the position she was occupying in enforcement would be until sometime in

8

April of 2000.

Eligibility analysis was supervised by an Executive I.  An Executive I position is below an Administrative Assistant II.  Cheryn Lawson, Wanda Kaidell and JoAnn Bubonic are all in Executive I positions.   Prior to February of 2000, the bureau typist had signature authority for Master Sergeant Whitley when he was Firearm Owner's Identification ("FOID") manager.   Before Mr. Whitley provided the typist with his signature authority, two supervisors with an Office Administrator IV or V title had signature authority.

The Plaintiff believes that Chad Carter was removed from her supervision because she reported him for eavesdropping.  Metzger believes the evaluation she received in October of 2001 was an attempt to retaliate against her.  ISP alleges Metzger's 2001 evaluation rated her at the highest possible rank that she could obtain or receive for that year.  The Plaintiff lists this as a statement of fact which she disputes, but she offers no explanation.  Metzger received the maximum amount of money that she could receive based on such an evaluation.  She is maxed out on the pay

scale for her position.

The Plaintiff believes that ISP has been retaliating against her off and on since 1993. ISP alleges that Lonbom was not a part of her previous action in federal court that was tried in May 2001. The Plaintiff claims that while Lonbom was not a defendant in the previous action, this does not mean that he was not aware of the facts of her claims. Rather, Lonbom asked her why she had not accepted a confidential settlement proposal that had been made to her.

The Plaintiff does not know if she had effective CMS promotional grades from 2001 to 2003. Metzger sent a letter to CMS requesting a job audit of her position on approximately May 20, 2002. The audit process involves CMS determining the classification for that position. The Plaintiff submitted her first charge alleging retaliation in this case three days after she sent her request for a desk audit. ISP alleges Metzger believed that her request to have a PSA position created for her was denied for retaliatory reasons because she was reporting wrongdoing, violations of statutes or other errors. The Plaintiff responds that she believes ISP has retaliated

10

against her because she has pointed out unlawful conduct on the part of ISP employees. This includes objecting to unlawful discrimination that she has been subjected to as well as other wrongdoing she has reported.

The Defendant asserts that Plaintiff also believed the denial was retaliatory based upon statements from Deputy Director DaRosa; however, the issues related to DaRosa's statements were litigated in her prior proceeding. The Plaintiff does not dispute this statement. Metzger claims, however, that DaRosa's statement was that she would never be promoted as long as she maintained a lawsuit against the ISP. She also notes that DaRosa had a very significant position within ISP.

The Plaintiff alleges that Mr. Lonbom retaliated against her on December 13, 2001, by yelling at her. Metzger believed that Lonbom yelled at her because she made him look bad to his boss in reference to her 2001 evaluation. The Plaintiff's allegation that they withheld information from her on April 25, 2002, stems from ISP having LEADS OP messages rerouted from a terminal out in the open to a front desk PC to which Metzger did not have a password. Prior to rerouting the information, it was not sent to

11

a specific person's work station.  At the time the information was transferred, the terminal the information had been sent to was removed because the information could now be sent directly to a personal computer. The terminal the original information appeared on was just a printer which kept printing out information.  There is always an employee stationed at the computer where the information is now sent.  Metzger never asked any of the employees stationed at the computer to print out information for her. Persons who are stationed there are supposed to print out the information as they receive it and place it in a box.

The Defendant next alleges the Plaintiff is not claiming that Lonbom or Grubb instructed anyone or ordered anyone not to give her the OP information once it was routed to the new computer.  She is not claiming that employees were instructed to intentionally delay providing the information to her, to hold on to it for a period of time, or to give it to her late.

The Plaintiff alleges that her signature authority was removed in May of 2002 in retaliation.  When Wasilewski was assigned FTIP responsibility,

the signature process was divided up and Wasilewski was signing FTIP revocations and Kahrliker was doing the enforcement ones.  Metzger retained her signature authority on enforcement files.  From February of 2000 to May of 2002, FTIP revocation letters went out through the enforcement program.  Just prior to May of 2002, Wasilewski was assigned responsibility for FTIP revocations and the typists had his signature authority.

The Plaintiff filed her next charge of discrimination on June 4, 2003. On January 9, 2003, Metzger received a letter from CMS informing her that her position was properly classified as an Administrative Assistant II.  The following day, she filed an internal EEO complaint with ISP EEO Officer Suzanne Bond.  Metzger appealed to CMS to reconsider its determination that she should only be classified as an Administrative Assistant II.  CMS adhered to its determination that she should be classified as an Administrative Assistant II.

In April of 2003, during the time that CMS was reconsidering its audit decision pursuant to the Plaintiff's request, there was a meeting of some

13

members of ISP management.  Metzger was not at the meeting and does not know the details of what was discussed.  She does not know if any of the discussions at the April meeting were related or communicated to CMS in any way.  The April meeting occurred after CMS had already denied the position audit and determined that she was properly classified as an Administrative Assistant II.  According to Metzger, any finding by CMS that her position was properly classified as an Administrative Assistant II means that she was retaliated against.  ISP alleges that Metzger would have challenged the CMS decision regardless of how the audit was handled or processed.  Metzger claims this statement misconstrues her testimony.

The Plaintiff does not know if Mr. Lonbom had any knowledge or familiarity with audit procedure or process.  She claims she was retaliated against in April 2003 because she had to have prior approval to work during non-working hours.  The requirement to obtain prior approval before working during non-work hours included people other than Metzger, such as office associates.  When Lonbom was bureau chief, Metzger put in extra hours and it was just volunteered time.

14

At some point after Scott Giles took over as bureau chief in October 2002, he instructed Metzger's direct supervisor, Kahrliker, that if she was going to work extra hours, she would be given comp hours for the extra hours she worked. This would allow the Plaintiff to take off from work the number of hours she has earned. From November 2002 through April 2003, Metzger had generated more than five days of comp time. Any employee who was earning comp time but determined to not be working during unscheduled hours was precluded from earning comp time. ISP contends that Metzger never had made a request to work unassigned hours or for comp time that was denied. The Plaintiff claims that this statement misconstrues her claims. Her complaint is that she was treated differently in how comp time operated.

The Plaintiff has no knowledge as to what, if any, information Lonbom or Grubb changed, deleted or added to her desk audit request, as she has no first hand knowledge of what CMS had in its possession.

In 1995, as part of Metzger's previous lawsuit, she complained that she was required to get prior authorization or permission to work

extra/overtime hours. As part of her prior suit, in 1998, the Plaintiff filed a complaint with the Department of Human Rights regarding the failure to classify her as a PSA. Based on a statement made by DaRosa in 1995 that she would not get promoted while she had litigation pending (an issue decided against her), Metzger believed that the acts of retaliation which followed her testimony at trial in May 2001 were in retaliation for her testifying at that trial. Metzger's allegation that ISP failed to promote her on May 30, 2003, to a PSA position is not based upon her request to be placed into an open position. That failure to promote retaliation claim is based on the fact that her title was not upgraded or changed to a PSA. The Plaintiff believes that ISP has been retaliating against her continuously and in an ongoing fashion because of the charges she filed in 1994, 1995, 1997 and 1998. The Defendant contends that Metzger cannot identify a single decision made by ISP with which she disagreed that she did not allege was an act of retaliation. The Plaintiff claims that statement is a generalization which completely misconstrues her testimony.

D. Plaintiff's additional statements of undisputed fact

Mr. Lonbom used to be the bureau chief at the Firearm Service Bureau. The FSB was initially under the ISP's Division of Administration. ISP claims this allegation is immaterial. Rick Kahrliker left the position of enforcement section supervisor on May 31, 2003 and was replaced by Mark Atchison. ISP notes that both individuals were sworn officers. The Plaintiff alleges that Linda Traylor, who was not a sworn officer, performed the job duties of the enforcement section supervisor. ISP contends that this allegation is immaterial. It notes that the enforcement unit was created in late 2000, which was prior to the Plaintiff engaging in protected speech. Mr. Lonbom testified only that prior to the creation of the enforcement unit, Traylor performed some of those duties. ISP asserts, therefore, that because the enforcement unit was created with a sworn officer prior to the Plaintiff engaging in alleged protected speech, the fact that some of the duties were performed by a non-sworn officer prior to its creation is not material.

The Plaintiff alleges that throughout his employment with ISP, Lonbom has never been employed as a sworn employee and has

17

continuously worked as a civilian employee.  ISP claims this allegation is immaterial because Metzger did not apply for the position occupied by Lonbom.  Metzger states that she has been employed by ISP since 1985 and is very good at performing her job duties.  ISP contends these allegations are immaterial.

Since February 2002, Metzger has worked as an Administrative Assistant II in the FOID Enforcement Section of the FSB.  During her tenure, Metzger has reported to the following individuals: (1) Mark Whitley; (2) Rick Kahrliker; and (3) Mark Atchison.

The Plaintiff claims that in her position at FOID enforcement, she is responsible for supporting law enforcement agencies.  In this capacity, she is responsible for explaining revocation and FOID eligibility to law enforcement personnel throughout Illinois.  Additionally, she advises law enforcement on Illinois statutes and federal law and what actions they must take to get firearms out of the hands of potentially dangerous individuals. Metzger is also responsible for processing clear and present dangerous revocations.  A clear and present danger revocation is made when an

individual poses a significant threat of harm to the public.  ISP disputes

these allegations and claims that Metzger's position in the enforcement unit

is to support the sworn officer in enforcement.  Moreover, the Plaintiff has

not foundationally supported her implied expertise to advise law

enforcement on how to apply Illinois statutes and federal law.  ISP states

that this is just Metzger's self-serving description of her employment.

The Plaintiff next alleges that when Rick Kahrliker replaced Mark

Whitley as FOID enforcement section head, she was tasked with training

Kahrliker on what his duties were.  Similarly, when Atchison replaced

Kahrliker, Metzger trained him on what his job duties were, and how he was

to perform them in compliance with established policy and procedures.  ISP

denies this allegation and notes that the Plaintiff neither cites to any portion

of the record nor lays a foundation for the statement.

The Plaintiff next asserts that in a previous lawsuit, she named Tim

DaRosa as a defendant.  Mr. DaRosa was formerly employed by ISP as

Deputy Director of the Division of Administration.  Metzger claims that he

told her she would never be promoted as long as she maintained legal action

against ISP.  The Defendant denies this allegation and notes that Plaintiff has raised it in previous litigation which was decided against her. Accordingly, it should be barred under either collateral estoppel or res judicata.

The Plaintiff contends that because she was responsible for training each of the last two individuals to perform the job of FOID enforcement section head, she is well aware of their job duties.  Moreover, she works very closely on a day to day basis with those individuals and, as such, knows what they do daily.  Metzger claims she performs the exact same job duties that each of them has performed.  ISP denies this allegation and states that Metzger's self-serving testimony is not foundationally supported.  It notes that the Plaintiff has not gone through the Police Academy, is not a sworn officer, and has offered no evidence of credentials or training in law enforcement, or qualified herself as a trainer.  Her self-serving opinion that she trained others is not material.

Next, the Plaintiff contends that in her underlying lawsuit, she and her attorney were involved in settlement negotiations with ISP.  During those

20

negotiations, which Metzger had been told were to remain confidential, Lonbom approached her and told her that he could not believe she did not accept the settlement proposal they had made to her and that he would have taken it in a heartbeat.  When asked by the Plaintiff how he knew about the settlement offer that had been extended to her, Lonbom advised her that Mr. DaRosa had told him about it.  The Defendant denies this allegation.  It notes first that Metzger did not provide this information in her deposition when asked to disclose all the reasons for her conclusion that she was being retaliated against.  Moreover, it is a hearsay statement about a prior settlement negotiation.  ISP further maintains it is immaterial whether Lonbom offered the opinion that she should accept or not accept the settlement.  It notes that Plaintiff "craftily" does not say that Lonbom stated he had knowledge of the topic of the litigation.

The Plaintiff alleges that throughout Kahrliker's tenure at FOID enforcement, she consistently performed her job duties at an exceptional level and was a valuable member to ISP.  ISP states that allegation is immaterial.  The Plaintiff further asserts that Kahrliker recommended that

21

her position be classified as a PSA. He was advised by Mr. Lonbom that this could not be done for financial reasons. ISP claims these allegations constitute hearsay. It notes that Lonbom stated that he had no authority to create a PSA level position. ISP alleges that Metzger does not otherwise lay the foundation for Lonbom's hearsay statement, or provide that the document could create the position with CMS approval or provide any exception to the double hearsay comment about a matter over which Lonbom had no authority. The Plaintiff next contends that she performed the same job duties as Kahrliker during the period of time she worked in FOID enforcement. The ISP states this allegation is immaterial; the fact that Kahrliker failed to perform his job is not relevant.

Metzger alleges that during an Illinois Department of Human Rights fact finding conference, Lonbom made the statement that he did not care if Metzger was the best "god damn" employee in the department, he would never promote her. ISP denies this statement and notes that it is hearsay.[3] It contends that Metzger does not foundationally establish the authority of

---

[3]The Plaintiff relies on Kahrliker's affidavit to support that allegation.

Lonbom to promote or not promote.  Moreover, it is undisputed that Plaintiff went through CMS, an independent agency.  ISP contends that Metzger has not established that Lonbom has any role in the decision-making process, other than offering his opinions as to what her duties are. The Plaintiff next asserts that it was evident that Lonbom had an animus against her.  The Defendant claims this allegation is immaterial, noting that a former employee's opinion[4] about Lonbom having animus is irrelevant except to the extent that it establishes Plaintiff had a personality conflict with Lonbom unrelated to her claims.

## II. ANALYSIS

Metzger claims that two significant instances form the basis of her retaliation claims.  The first is that she was denied an upgrade to a PSA position.  Additionally, she was passed over for a promotion in favor of another employee.  ISP contends that the Plaintiff has previously raised these claims and has failed to demonstrate how they show a change in her treatment from prior to her alleged protected speech.  Accordingly, the

---

[4]The Plaintiff again relies on Kahrliker's affidavit.

23

Defendant contends it is entitled to summary judgment.

A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "material fact" is a fact which may affect the outcome of the litigation, given the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  There is a "genuine issue" of material fact when a reasonable juror could find that the evidence supports a verdict for the non-moving party.  Id.  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not

merely restate his allegations, to show that a genuine issue exists.  Sartor v.

Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).

### B. Metzger's prima facie case

There is more than one way for a plaintiff to establish a prima facie

case of retaliation under Title VII.  Title VII prohibits an employer from

"discriminating against any individual . . . because she has opposed any

practice, made an unlawful employment practice by [Title VII]."  42 U.S.C.

§ 2000e-3(a).  One way in which a plaintiff establishes a prima facie case of

retaliation is pursuant to an adaptation of the McDonnell Douglas test.

This "requires the plaintiff to show that after filing the charge [or otherwise

opposing the employer's allegedly discriminatory practice] only he, and not

any similarly situated employee who did not file a charge, was subjected to

an adverse employment action even though he was performing his job in a

satisfactory manner."  Sylvester v. SOS Children's Villages Illinois, Inc., _

F.3d __, 2006 WL 1896394, at *1 (7th Cir. July 12, 2006) (quoting Stone

v. City of Indianapolis Public Utilities Division, 281 F.3d 640, 644 (7th Cir.

2002)).  This is known as the "indirect" method of proof.  See Sylvester,

25

2006 WL 1896394, at *1.

The Seventh Circuit has recently clarified the "direct" method of proof.  A plaintiff need only "prove by means of circumstantial evidence that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains." Sylvester, 2006 WL 1896394, at *1 (internal quotation marks omitted). "From the relevant standpoint–that of probative value–'direct' and 'circumstantial' evidence are the same in principle."  Id. at *2 (internal quotation marks omitted).  Accordingly, the distinction between the two types of evidence "is irrelevant to assessing the strength of a party's case." Id.  The Plaintiff relies on this method in attempting to establish a prima facie case of retaliation.

(1)

In contending it is entitled to summary judgment, ISP first claims Metzger cannot demonstrate that it would not have engaged in the same conduct of which she complains but for her alleged protected activity.  It asserts the Plaintiff has raised these issues on previous occasions, and they

26

have been decided against her. The ISP contends that while the specific conduct may be different, the Plaintiff has not shown that the alleged retaliatory conduct of which she complains was anything more than her continued complaint that ISP would not make her a PSA.

Next, the Defendant alleges the Plaintiff cannot establish that it has retaliated against her, in that she cannot show she was the recipient of a materially adverse action taken by her employer. It asserts that the Plaintiff has pointed mostly to various inconveniences. ISP contends, moreover, that while the Plaintiff's May charge of discrimination alleges that Mr. Lonbom retaliated against her because she testified at trial, Lonbom specifically stated that he had no knowledge as to the nature or the type of complaints or allegations involved in that suit. Because the alleged retaliator did not know the Plaintiff engaged in statutorily protected activity, ISP asserts she cannot show that any decisions were retaliatory. Additionally, ISP contends the Plaintiff's complaint that it has failed to create a non-existent position for her does not demonstrate a materially adverse action on the part of the employer. ISP alleges that the Plaintiff is simply seeking special treatment,

which cannot serve as a negative change in her employment terms or status. It further asserts the Plaintiff's failure to establish that she sought or applied for an open and existing position is fatal to her claim.

Alternatively, ISP alleges that the ultimate decision-maker on whether a new position could have been created for the Plaintiff was CMS, which ultimately reviewed and denied her request. Because ISP was not the decision-maker, therefore, the Plaintiff has failed to establish evidence that this denial was retaliation on its part.

Next, the Defendant contends the Plaintiff's allegation that it retaliated against her by having meetings in April of 2003 to discuss how ISP would respond or handle Plaintiff's pending request for reconsideration of CMS's denial of her petition to have a new job created for her also fails to identify a materially adverse decision. ISP states that "the decision to meet by the employer to discuss or provide a uniform presentation to the non-employer decision-maker is not an adverse action related to Plaintiff." Given that CMS had already denied the Plaintiff's request, the subsequent meeting fails to establish retaliation. Moreover, ISP claims it is not

28

retaliation for the employer to have meetings to develop unified positions and presentations to tribunals and/or investigative agencies.  ISP notes that Plaintiff has no knowledge or information as to what was discussed at the meeting and what was transmitted to CMS.

ISP next alleges the Plaintiff has acknowledged that any decision by CMS which did not award her the position she sought would be challenged by her regardless of any actions or inactions taken by ISP.  ISP contends, moreover, that Plaintiff's retaliation charge stems from her displeasure that it did not vigorously advocate her promotion.

ISP claims the Plaintiff's complaints are typical of a "chip on the shoulder employe[e] complaining only about minor or insignificant changes in her responsibilities."  Because the Plaintiff has failed to show any materially adverse actions which were based on her alleged protected activities, ISP maintains it is entitled to judgment as a matter of law.

A plaintiff using the direct method of proof must also produce evidence of a causal link.  See Sylvester, 2006 WL 1896394, at *1.  ISP asserts the Plaintiff has admitted that she received an evaluation which gave

her the highest possible rating and the highest possible pay she could receive in October or November of 2001, which was after she had testified in her court case, but prior to any of the acts of which she complains. Moreover, ISP claims that Plaintiff further identifies that Scott Giles, when he took over as bureau chief provided to her a new benefit, comp time, which she had not been receiving prior to his becoming bureau chief. Mr. Giles made this decision in approximately November 2002. ISP notes the Plaintiff alleges that Giles retaliated against her, however, in 2003 for the filing of her May 2002 charge of discrimination. ISP asserts, therefore, that both Lonbom and Giles engaged in substantially favorable actions toward the Plaintiff in terms of her compensation and benefits prior to any of the alleged conduct which she has alleged was retaliatory.

Based on the foregoing, the Defendant maintains that Plaintiff cannot show there is a causal connection between her alleged protected activity and the retaliatory acts. ISP alleges, moreover, that any alleged adverse actions all occurred prior to the Plaintiff's alleged protected activity, so there is no causal connection between the two.

(2)

In her response, the Plaintiff notes ISP does not dispute that she has been an exemplary employee and that she has engaged in statutorily protected activity.  The Plaintiff claims she is able to show that she suffered an adverse employment action and that there is a causal connection between her protected conduct and the actions of ISP.

The Plaintiff first questions whether a Title VII retaliation plaintiff must establish an adverse job action.  She claims such a requirement is not consistent with the statute or with a number of cases decided by the Seventh Circuit in recent years.  In Robinson v. Shell Oil Co., 519 U.S. 337, 339-40 (1997), moreover, the Supreme Court concluded that the protections against retaliation under Title VII extended to a former employee as well as to current employees.  The allegation in Robinson, 519 U.S. at 339, was that the employer retaliated against the former employee who had filed an EEOC charge by providing a negative employment reference.  Because the plaintiff in Robinson was not an employee at the time of the alleged retaliatory action, the Plaintiff contends that the

Supreme Court has recognized that Title VII retaliation claims are treated differently than other Title VII claims.

The Plaintiff states that the Seventh Circuit has recognized the principle in Robinson and has noted the distinction between a retaliation claim brought under Title VII and other claims brought under Title VII. See McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996) ("The provision regarding retaliation may intentionally be broader [than provisions requiring an adverse employment action], since it is obvious that effective retaliation against employment discrimination need not take the form of a job action."); see also Herrnreiter v. Chicago Housing Authority, 315 F.3d 742, 745 (7th Cir. 2002) ("We do not mean to suggest . . . that retaliation, to be actionable under Title VII (or other statutes), has to involve an adverse employment action.  It does not."); see also Aviles v. Cornell Forge Co., 183 F.3d 598, 605 (7th Cir. 1999).

The Plaintiff claims that even if an "adverse employment action" is required, she is able to point to one.  Metzger notes that in addition to the many different instances of inappropriate treatment by her supervisors,

there are two clear instances of adverse employment actions.  First, she was not promoted into the position of enforcement section supervisor when Rick Kahrliker left the position in late May 2003, despite her alleged clear qualifications and her desire to hold the job.  The second adverse action that the Plaintiff points to is ISP's consistent failure to promote her into a PSA position.

Next, the Plaintiff alleges a reasonable jury could conclude that the actions taken against her were done because she engaged in statutorily protected conduct.  The Plaintiff contends the ISP's assertion that she could not have been retaliated against because the treatment she received from her supervisors had not gotten any worse should be rejected.  The fact that an employee has been treated poorly does not preclude further claims of discrimination.

Metzger next disputes ISP's argument that because Lonbom was not aware of the particulars of her claim, he could not possibly have retaliated against her.  The Plaintiff suggests that Lonbom's deposition testimony indicates that he wanted nothing to do with her lawsuit–not that he did not

know about her lawsuit.  Lonbom basically testified that he was aware of the lawsuit, but he did not know what issues were involved.  The Plaintiff claims there is circumstantial evidence tending to show that Lonbom knew more than he acknowledged during the deposition.  Metzger alleges that Lonbom told her she should take the confidential settlement offer made by ISP and that he would take it in a heartbeat.  She states that Lonbom knew about the settlement offer because he had been told by Tim DaRosa, a defendant in the Plaintiff's previous case.  The Plaintiff contends, therefore, that the fact that Lonbom was brought in to discuss settlement negotiations suggests that he had more knowledge of the lawsuit than what he now claims.

The Plaintiff notes further that Tim DaRosa was Lonbom's boss when he started at the agency.  She alleges that DaRosa had previously told her that as long as she had any litigation against ISP, she would never be promoted.  Metzger also states that Lonbom told her that even if she was the best "god damn employee" in the Department, he would see to it that she was never promoted.  Accordingly, the Plaintiff contends that Lonbom clearly had animosity toward her that is not apparent from his deposition

34

testimony.

Metzger next alleges that ISP's proffered reasons for its actions are pretextual.[5]  She claims that ISP's justification for not upgrading her title to that of a PSA is that it did not make that decision; rather, that decision was made by CMS.  The Plaintiff contends, however, that a jury could find that this justification is untruthful and that the real reason was unlawful.

Regarding ISP's argument that Kahrliker's position was for a sworn officer and Metzger was not a sworn employee, the Plaintiff contends that ISP has not presented a position description that would show this position must be a sworn position.  According to the Plaintiff, this is because such a position description does not exist.  It was Mr. Lonbom's conclusion that the position had to be filled by a sworn officer.  However, the Plaintiff asserts that a jury could determine that this conclusion was reached simply

---

[5]The Court notes that the "direct" method of establishing a prima facie case of retaliation, as recently articulated by the Seventh Circuit in Sylvester, 2006 WL 1896394, at*1, does not employ the traditional burden-shifting framework of McDonnell Douglas.  Accordingly, a plaintiff need not show that the employer's asserted justification is a pretext for an impermissible reason.  Because the Plaintiff's alleged evidence of pretext may still be relevant to whether she suffered an adverse employment action because of her protected activity, however, the Court will consider the Plaintiff's pretext arguments.

to prevent her from getting the position.  She notes that Kahrliker's job duties were previously performed by a non-sworn employee named Linda Traylor.  The Plaintiff notes, moreover, that the position at issue was the section head of FOID enforcement, the primary purpose of which was to get better information to the field.

The Plaintiff states that it is difficult to understand why Lonbom believes the position needs to be filled by a sworn officer.  She asserts it was the only FOID enforcement section that Lonbom decided could not be filled by a civilian employee.  Moreover, as an administrative assistant in the FOID section, the Plaintiff claims she repeatedly performs all of the job duties that the enforcement section supervisor would perform.  Kahrliker testified that she was responsible for exactly the same duties that he was.  Moreover, the Plaintiff states she has been assigned to train each of her supervisors once they began their job.

Based on the foregoing, the Plaintiff alleges that a jury could determine the assertion that the enforcement section manager must be a sworn officer to be untrue.  It could find that it was fabricated as an excuse

by Lonbom to keep from offering the position to Metzger.

Next, the Plaintiff alleges that the failure to upgrade her position to that of a PSA is also pretextual. She contends the assertion that the decision was made by CMS and not ISP is inconsistent with what Kahrliker was told. The Plaintiff claims Kahrliker was told that the reason they could not allow the upgrade was because of financial considerations. Metzger asserts that a jury could conclude that ISP's shifting justifications for its actions are pretextual.

(3)

In its reply brief, ISP reiterates that the Plaintiff raised the two claims prior to engaging in any of her alleged protected speech in this case, and she has not distinguished why her current retaliation claims show a change in her treatment from prior to her alleged protected speech.

ISP contends the Plaintiff apparently believes that the Court must sit as a super-personnel department and determine whether it should create new positions. Moreover, the Court must sit as a super-personnel department in deciding whether it believes enforcement positions should be

37

occupied by sworn police officers or non-sworn personnel.

ISP claims that Plaintiff offers no support for the proposition that the employer must create special opportunities for her that do not exist for other people simply because she has made allegations. CMS is the master personnel agency for agencies operating under the government and controls job titles and positions. ISP contends that Plaintiff has offered no evidence that it may create job titles and positions without the approval of CMS. ISP further alleges the evidence establishes that CMS, prior to Plaintiff engaging in protected speech (her 1998 audit request), felt that she did not warrant an upward allocation. ISP asserts that Plaintiff continued with her allegations after losing her prior suit, but CMS did not believe that a promotion was warranted.

ISP asserts that Plaintiff has proffered no evidence tending to show that any portion of CMS's decision to deny allocating her upward was based on anything other than a neutral evaluation. Moreover, ISP claims the Plaintiff does not argue that she applied for open PSA positions. According to ISP, the Plaintiff's position is that instead of her seeking promotional

opportunities within the agency, the agency should create opportunities for her.  The Plaintiff does not claim that there was an open PSA position to which she applied; instead, she disagrees with the Department's decision to make the head of an enforcement unit a sworn officer and the agency's creation of her position as a support position for the sworn officer.  ISP contends that CMS agreed the Plaintiff was simply in a support role for the sworn officer, and she offers no evidence to contradict these explanations.

The Defendant claims that Plaintiff has not alleged a prima facie case of retaliation.  Accordingly, ISP claims it is entitled to summary judgment.

(4)

The Court notes that in her previous lawsuit, Metzger alleged that ISP retaliated against her by failing to promote her and by denying reclassification of her position to that of a PSA.  Of course, these are essentially the same alleged retaliatory acts that are at issue in this case.  The difference is that the Plaintiff now claims she was retaliated against because of her previous lawsuit and because of her charges of discrimination since that case.  One of the reasons advanced by ISP as to why it is entitled

to summary judgment is that these issues have already been decided against the Plaintiff.   ISP claims, therefore, that pursuant to res judicata or collateral estoppel, it is entitled to summary judgment.

ISP recognizes that the specific conduct about which the Plaintiff complains in the case <u>sub judice</u> occurred after the issues in the previous case were decided against her.  Because the claims are not based on the same factual allegations, therefore, it does not appear they are barred by res judicata.  <u>See</u> <u>Herrmann v. Cencom Cable Associates, Inc.</u>, 999 F.2d 223, 226 (7th Cir. 1993) ("[T]wo claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations.").  In other words, the fact that the issue of reclassifying the Plaintiff's position as a PSA was decided against her in another case does not necessarily mean that she was not retaliated against in this case.  However, it does perhaps tend to make more credible ISP's assertion that "plaintiff has not demonstrated that the alleged retaliatory conduct of which she now complains was anything other that [sic] her continued complaint that ISP won't accede to her demands and make her a PSA."

40

The parties dispute who decides whether a position is upgraded to a PSA position. The Plaintiff continues to believe that her position should be classified at that level. The Court concludes that there is no genuine issue of material fact this was a decision that was made by CMS, and not ISP. ISP makes several factual allegations relating to its assertion that CMS is the decision-maker that the Plaintiff has failed to adequately dispute. ISP has asserted the following: (1) Although Lonbom did not believe Metzger's work was at PSA level, he is not the ultimate classifier of jobs, CMS is; (2) Lonbom was pleased that CMS was involved as this would allow him to say what he believes the job entails, Metzger and her supervisors could say what they thought the job entailed, and that CMS could decide; (3) Lonbom did not have the authority to make the Plaintiff's position into a PSA level position; (4) To alter the Plaintiff's position to a PSA level position would require permission and agreement from CMS; and (5) Lonbom's only role in the job audit was preparing a memo describing from his perspective what Metzger's job entailed.

The Plaintiff attempts to dispute most of the aforementioned

allegations by asserting that Rick Kahrliker was told by Lonbom in April of 2002 that the reason Metzger was not placed in the PSA grade was because of budgetary constraints, or that while these statements may reflect Lonbom's testimony, they do not reflect what he has said on previous occasions, given that at one time he specifically advised Kahrliker that Metzger could not be promoted because of financial considerations.

The problem with the Plaintiff's argument is that the documentary evidence submitted by ISP demonstrates that CMS controls the job titles and positions at issue in this case.  The position audits demonstrate that CMS evaluates the Plaintiff's position.  ISP notes that Metzger offers no evidence, such as deposing someone from CMS, which suggests that any portion of its decision to deny allocating her upward was based on anything other than a neutral evaluation.  The Plaintiff does not even argue that Kirk Lonbom, in describing what he believed her job entailed, improperly influenced in any way CMS's evaluation of her position.

In asking CMS to reconsider its analysis of her position, the Plaintiff argued that the PSA or the Executive II titles were more appropriate for her

42

assigned duties and responsibilities.  CMS did not agree, noting that "As Ms. Metzger's position is not vested with responsibility to manage unit operations nor serve as a full line supervisor to professional staff, the positions are not comparable, nor is allocation of her position to the PSA class appropriate."  CMS further concluded that "on the basis of a review of the incumbent's duties and responsibilities, pertinent class specifications, and comparable existing positions, the position occupied by [the Plaintiff] is determined to be properly allocated as Administrative Assistant II."

The Plaintiff has presented no evidence that CMS's evaluation was not neutral or was unfair in any way.  Metzger's argument that her position should be classified at PSA level is based in large part on her own assessment of the position.  The Plaintiff also relies on the opinion of her former supervisor, Rick Kahrliker, who stated that she trained him when he began in the FOID enforcement section.  Kahrliker also stated that Metzger performed the same FOID job duties as he did.

There appears to be little doubt that Metzger has been a fine employee for ISP.  Lonbom even acknowledged that her job performance has been

43

very good.  As the Defendant alleges, however, this Court does not sit as a super-personnel department second guessing job evaluation decisions of CMS.  The issue is whether ISP retaliated against the Plaintiff in declining to upgrade her position to a PSA level.  After viewing the evidence in a light most favorable to the Plaintiff, the Court concludes that the Plaintiff has failed to create a genuine issue of material fact on whether there is a causal connection between the alleged adverse employment action and any protected activity.  Accordingly, the Defendant is entitled to summary judgment on that claim.

(5)

According to Metzger, the second incident which forms the basis of her retaliation claims is that she was passed over for a promotion in favor of another employee.  Specifically, the Plaintiff alleges ISP retaliated against her by failing to promote her into the position of enforcement section supervisor when Rick Kahrliker left in May 2003, despite her clear qualifications and her desire to hold that position.  However, there appears to be some confusion as to whether this claim is part of the case.

In her response to the Defendant's summary judgment motion, the Plaintiff states that ISP does not even address this claim, despite its acknowledgment that the claim is part of the case.[6]  The Court notes that while the Plaintiff's EEOC charge and her complaint allege that the failure to promote is part of the retaliation claim, those allegations are lacking in specificity.  In support of the allegation, the Plaintiff's EEOC charge states, "On May 30, 2003, Respondent failed to promote me to the position of Public Service Administrator ("PSA").  No reason was given for the denial of promotion."  Metzger's complaint is even less specific.  The Plaintiff does allege that ISP "[r]efused to promote her on multiple occasions."  It appears this is the only portion of the complaint which could be interpreted as a claim for the failure to promote her to Kahrliker's position.

Apparently, Kahrliker's FOID enforcement position was filled on or about May 30, 2003.  Otherwise, it would be difficult to distinguish the

---

[6]This "acknowledgment that the claim is part of the case" is apparently ISP's very general statement that the Plaintiff's retaliation charge includes, among other allegations, the failure to promote her on May 30, 2003.  It does not specify whether the charge is referring to a PSA position in general or, more specifically, to Kahrliker's position.

allegations relating to this claim from the allegations which accompany her other claim--that her position should be a PSA position.  Given the very general nature of the allegations that Metzger was retaliated against when she was not promoted to Kahrliker's position, ISP's failure to address the claim in its initial brief is understandable.

The Court notes that in investigating the Plaintiff's previous allegations of discrimination, the Illinois Department of Human Rights on August 13, 2003 determined that there was no substantial evidence in support of those allegations.  That investigation related to, among other things, the apparent allegation that the Plaintiff was discriminated against when she was not promoted in 2001 to succeed Mark Whitley as enforcement section supervisor; that position went to Rick Kahrliker.  ISP noted that Metzger did not apply for the position.  Metzger then stated that the failure to promote "had nothing to do with an open position."  Rather, she wanted her duties to be re-evaluated so that she would be classified as a PSA.  The Plaintiff clarified that this was the case in an October 2, 2002 memo to Kahrliker.  The Court mentions this only to show that there

apparently is a history of confusion as to whether the Plaintiff applied for the enforcement section supervisor position.[7]

This mystery can be solved by examining the Defendant's statement of alleged material facts in support of its motion for summary judgment, and the Plaintiff's responses to those facts.  The Defendant's 93rd undisputed material fact provides, "Ms. Metzger's allegation that ISP failed to promote her on May 30, 2003, to a PSA position is not based upon her request to be placed into an open position."  Its 94th undisputed material fact states, "Her May 30, 2003, failure to promote retaliation claim is based on the fact that her title was not upgraded or changed to a PSA."  In her response to ISP's statement of material facts, the Plaintiff says that she does not dispute statements 89 through 95.  Metzger's own additional statements of material fact do not allege otherwise.

Accordingly, the Plaintiff has admitted the allegation that the

---

[7]This history of confusion as to the nature of this claim is apparent when one reads a portion of the Plaintiff's deposition testimony found at pages 36-49 of Exhibit L, which was submitted in connection with ISP's summary judgment motion.  It appears that the Plaintiff, her counsel, and the Defendant's counsel are all confused as to the factual basis of the May 30, 2003 retaliation claim.

Defendant failed to promote her on May 30, 2003 does not refer to retaliation by not promoting her to Kahrliker's position. Rather, it relates to the claim which the Court has already addressed–retaliation by failing to upgrade her position to a PSA. Consequently, the Defendant is entitled to summary judgment on the Plaintiff's alleged claim that she was retaliated against when she was not promoted to Rick Kahrliker's position.

### III. CONCLUSION

The Court concludes that Defendant ISP is entitled to summary judgment. There is no causal connection between the failure to promote the Plaintiff to a PSA position and any protected activity on her part. Accordingly, she is unable to maintain a retaliation claim against ISP pursuant to Title VII. The Plaintiff has also acknowledged that she is not pursuing a retaliation claim based on the failure to promote her to Rick Kahrliker's position.

Finally, the Court reiterates that while an "adverse employment action" may not always be required in a Title VII retaliation case, the Plaintiff has pointed to nothing else which might qualify as retaliation and

48

would preclude the entry of summary judgment in the Defendant's favor. In fact the Plaintiff states, "Metzger acknowledges that many of the issues addressed by the ISP in its brief would not qualify as a materially adverse job action.  The actions do, however, demonstrate that Metzger has been treated very poorly."  The Court concludes the Defendant is entitled to summary judgment on the Plaintiff's retaliation claims.

Ergo, the Defendant's motion for summary judgment [d/e 18] is ALLOWED.  The Clerk of Court will enter judgment in favor of the Defendant and against the Plaintiff.  The final pretrial conference and trial are hereby CANCELED.

IT IS SO ORDERED.

ENTER: July 28, 2006

FOR THE COURT:

s/Richard Mills
United States District Judge

49